# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| WILLIAM LAYNE ROBERTS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MCLEAN COUNTY STATE'S ) <br> ATTORNEY'S OFFICE; DON KNAPP, *in* ) <br> *his official capacity*; KRISTEN ) <br> ALFERINK, *in her individual capacity*; ) <br> JASON CHAMBERS, *in his individual &* ) <br> *official capacities*; & MCLEAN COUNTY, ) <br> ) <br> Defendants. ) | Case No. 1:19-cv-01316 |

## ORDER & OPINION

Before the Court is Defendants' Motion to Dismiss for Failure to State a Claim. (Doc. 11). Plaintiff has responded (doc. 12), so the matter is ripe for review. For the following reasons, the Motion is granted in part and denied in part.

### BACKGROUND[1]

Plaintiff William Layne Roberts has brought suit against Defendants McLean County; McLean County State's Attorney's Office; current McLean County State's Attorney Don Knapp, in his official capacity; Assistant State's Attorney Kristen Alferink, in her individual capacity; and then-McLean County State's Attorney Jason Chambers, in his official and individual capacities.

---

[1] All facts are derived from the Complaint and accepted as true under the applicable legal standard.

Plaintiff began working at the McLean County State's Attorney's Office as an Assistant State's Attorney in 2016; he was placed under the direct supervision of Defendant Alferink. (Doc. 1 at 1, 6). Shortly after he began, Defendant Alferink, who was married, began sexually harassing Plaintiff; the harassment continued through his termination in November 2017. (Doc. 1 at 2, 6). The harassment largely included nonsexual touching and verbal communications, such as calling Plaintiff her boyfriend and favorite work person, discussing the status of their relationship, unnecessarily discussing details of sexual assault cases so as to discuss sex, and discussing personal matters. (Doc. 1 at 7–8).

Defendant Alferink would also make threatening statements to coerce Plaintiff to play along; such statements included: "I have your job in my hands," and "I have done a lot of things behind the scenes and in front of the scenes to help you at work - to make sure you don't get fired - to make sure you are being the best attorney you can be." (Doc. 1 at 8–9). Additionally, she falsely told Plaintiff she had cancer among other "fake emergencies" so as to engender sympathy and have a reason to talk to Plaintiff. (Doc. 1 at 9). Defendant Alferink would also create reasons to be alone with Plaintiff in closed-door meetings, micromanage his work, intervene between him and Defendant Chambers and other supervisory personnel, and wait for him to leave the office so they could walk to their cars together—all seemingly to create and maintain a relationship with him. (Doc. 1 at 7–9).

On November 22, 2017, Defendant Alferink entered Plaintiff's office and closed the door. (Doc. 1 at 10). "When Plaintiff attempted to leave, [Defendant] Alferink

grabbed his arm, leaned in toward him and attempted to kiss him." (Doc. 1 at 10). Later that day, Defendant Alferink had another supervisor summon Plaintiff into that supervisor's office where Defendant Alferink was waiting so she could speak to Plaintiff privately about their relationship and the attempted kiss. (Doc. 1 at 10).

Afterward, Plaintiff reported Defendant Alferink to Defendant Chambers, who said he would "look into it." (Doc. 1 at 11). According to the Complaint, Defendant Chambers had personally witnessed Defendant Alferink's conduct toward Plaintiff or should have witnessed it (doc. 1 at 7), and Plaintiff had previously reported Defendant Alferink's conduct to no avail (doc. 1 at 11); the Complaint, however, does not specify when the previous reports were made or to whom.

The next day, Defendant Alferink sent a text message to Plaintiff stating: ""You need to spend time this weekend seriously looking for a new job." (Doc. 1 at 11). On November 29, 2017, Defendant Chambers terminated Plaintiff's employment at the McLean County State's Attorney's Office. (Doc. 1 at 11).

## LEGAL STANDARD

To survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), the complaint must contain a short and plain statement of the plaintiff's claim sufficient to plausibly demonstrate entitlement to relief. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff is not required to anticipate defenses or plead extensive

3

facts or legal theories; rather, the complaint merely must contain enough facts to present a story that holds together. *Twombly*, 550 U.S. at 570; *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). The Seventh Circuit has consistently noted the essential function of Rule 8(a)(2) is to put the defendant on notice. *Divane v. Nw. Univ.*, 953 F.3d 980, 987 (7th Cir. 2020) ("A complaint must give the defendant fair notice of what . . . the claim is and the grounds upon which it rests." (internal quotation marks omitted)).

On review of a Rule 12(b)(6) motion, the Court construes the complaint in the light most favorable to the plaintiff. *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018). The Court also accepts all well-pleaded factual allegations as true and draws all reasonable inferences from those facts in favor of the plaintiff. *Id.* Allegations that are, in reality, legal conclusions are not taken as true and cannot survive a Rule 12(b)(6) challenge. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012).

## DISCUSSION

The Complaint contains nine counts alleged against the various Defendants. The instant Motion, however, only concerns Counts I–IV, which are each alleged against all Defendants, collectively.[2] Count I alleges an equal protection claim.

---

[2] "Group pleading"—that is, pleading a claim against all defendants without specifically explaining who is liable for what—is discouraged. If the complaint fails to explain why each defendant is respectively liable for the various claims, the complaint has failed to adequately put the defendants on notice and may be dismissed under Rule 12(b)(6) as to some or all defendants. Any amended complaint should be drafted with this principle in mind.

Counts II and III allege First Amendment claims for, respectively, retaliation for engaging in protected activities and for exercising the right to intimate association. And Count IV alleges a substantive due process claim.

Defendants move to dismiss the application of municipal liability alleged in Counts I–IV and to dismiss Counts II–IV in full. The Court will first address the arguments that Counts II-IV should be dismissed in their entirety and then will discuss whether the Complaint adequately pleads municipal liability as to the remaining claim(s).

**I.   Count II – First Amendment Retaliation Claim against All Defendants**

"To establish a claim for retaliation in violation of the First Amendment, a public employee first must prove that [his] speech is constitutionally protected." *Forgue v. City of Chicago*, 873 F.3d 962, 966 (7th Cir. 2017) (internal quotation marks omitted and alteration in original). "A public employee's speech is constitutionally protected only if it: (1) was made as a private citizen; and (2) addressed a matter of public concern." *Id.* An employee's failure to meet either element means "the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." *Id.* (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)).

"Sexual harassment is indeed an important matter, but not all speech relating to sexual harassment enjoys constitutional protection." *McKenzie v. Milwaukee Cty.*, 381 F.3d 619, 626 (7th Cir. 2004). "Purely personal grievances do not garner First Amendment protection, including personal grievances about sexual harassment in the workplace." *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 706 (7th Cir. 2010) (internal citations omitted). Whether speech is a public or private concern depends

on the "content, form, and context of a given statement." *Campbell v. Towse*, 99 F.3d 820, 827 (7th Cir. 1996).

The Complaint suggests Plaintiff's conversation with Defendant Chambers on November 22, 2017—the ultimate report of sexual harassment which allegedly resulted in his termination—was a private conversation wherein he officially reported Defendant Alferink's alleged harassment to their superior and which came on the heels of, arguably, the most egregious encounter with her. (Doc. 1 at 2, 3, 11).[3] Consideration of the content, form, and context of this conversation indicates Plaintiff reported the alleged harassment "solely for the private purpose of stopping [it]." *Kessel v. Cook Cty.*, No. 00 C 3980, 2001 WL 826914, at *4 (N.D. Ill. July 12, 2001). While is true the content of "Plaintiff's speech centered on information that can be 'fairly considered' as relating to matters of 'political, social, or other concern to the community' and subjects of 'legitimate news interest' " (doc. 12 at 4 (citation omitted)), the form and context of his speech demonstrate it was not his desire to publicly blow the whistle about sexual harassment in the McLean County State's Attorney's Office. Rather, the goal of the communication was simply to make the harassment against him stop, despite Plaintiff's claims to the contrary in his Response (doc. 12 at 5, 6).

Additionally, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from

---

[3] The Complaint suggests Plaintiff reported Defendant Alferink on multiple other occasions (doc. 1 at 2, 3, 11) but does not detail any other reports, so the Court cannot analyze the content, form, or context of such statements.

employer discipline." *Garcetti*, 547 U.S. at 421. "Determining the official duties of a public employee requires a practical inquiry into what duties the employee is expected to perform, and is not limited to the formal job description." *Forgue*, 873 F.3d at 967 (quoting *Kubiak v. City of Chicago*, 810 F.3d 476, 481 (7th Cir. 2016)). The Seventh Circuit has held internally reporting workplace misconduct is within an employee's duties, particularly when the employee is a law enforcement official. *Kubiak*, 841 F.3d at 481–82 ("[A]n employee who is verbally assaulted by a colleague would be expected to report the inappropriate behavior to a supervisor."). As with verbal abuse, an internal report of sexual harassment to an employee's and/or the harasser's superiors falls within the expected duties an attorney would perform.

In his Response, Plaintiff argues the purpose of his speech was to "bring wrongdoing to light" because it is a public concern. But that is not what Plaintiff did. In the relevant speech, Plaintiff privately reported sexual harassment to his and his harasser's superior.[4] He did not publicly shed light on Defendant Alferink's alleged wrongdoings or report them to Defendant Chambers for the purpose of exposing them on a wider scale prior to his termination.[5] And his report of sexual harassment by one

---

[4] Plaintiff also suggests he reported the alleged harassment to others outside the McLean County State's Attorney's Office after he was terminated. However, such speech is irrelevant here; Plaintiff's speech after the retaliatory event—his termination—cannot serve as the protected conduct necessary to prove retaliation. The same can be said for Plaintiff's reliance on retaliation for his public concern argument. (Doc. 12 at 4). The only speech relevant to his First Amendment claim is his speech prior to his termination.

[5] In that respect, Plaintiff's reliance on *Spiegla v. Hull*, 371 F.3d 928, 937 (7th Cir. 2004) (*Spiegla I*), disapproved in later appeal, 481 F.3d 961 (7th Cir. 2007) (*Spiegla II*) is misguided. Regardless, the Seventh Circuit in *Spiegla II*, 481 F.3d 965–67, repudiated the very proposition in *Spiegla I*, 371 F.3d at 937, on which Plaintiff relies.

7

superior—a very serious charge to be sure—is a far cry from the political corruption charge in *Kristofek v. Village of Orland Hills*, 712 F.3d 979, 984–86 (7th Cir. 2013), with respect to whether the speech was a public concern. If Plaintiff's argument were accepted, any report of sexual harassment would be considered a public concern, which runs afoul of binding Seventh Circuit precedent, *McKenzie*, 381 F.3d at 626; *Gross*, 619 F.3d at 706.

As a final note, Plaintiff suggests the Court ought to wait for a fuller record to determine whether his speech was a public or private concern. (Doc. 12 at 6). However, "whether speech is constitutionally protected is a question of law," and facts demonstrating the speech was a public concern as opposed to a private concern must appear on the face of the complaint. *Forgue*, 873 F.3d at 966–67. But because Plaintiff's claim is factually deficient as opposed to legally, he may file an amended complaint if he is able to cure the deficiencies identified herein.

II. **Count III – First Amendment Intimate Association Claim against All Defendants**

It seems neither party picked up on the fact the Seventh Circuit does not recognize a claim for interference with the right to intimate association under the First Amendment, so the briefing on this claim does not assist as much as it might.

> The Supreme Court has explained that the Constitution protects two distinct forms of free association. The first, freedom of expressive association, arises from the First Amendment and ensures the right to associate for the purpose of engaging in activities protected by the First Amendment. The second, freedom of intimate association, protects the right to enter into and maintain certain intimate human relationships. The freedom of intimate association receives protection as a fundamental element of personal liberty, and as such is protected by the due process clauses.

8

*Montgomery v. Stefaniak*, 410 F.3d 933, 937 (7th Cir. 2005) (internal quotation marks and citations omitted); *see also Roberts v. U.S. Jaycees*, 468 U.S. 609, 617–18 (1984).

To the extent Plaintiff's claim—the freedom to associate or not associate—is asserted under the First Amendment, it is dismissed with prejudice. The claim may, however, proceed under the Due Process Clause of the Fourteenth Amendment if the Motion to Dismiss fails to identify a factual deficiency. Discussion of this claim under the Fourteenth Amendment framework appears in the next section.

### III. Counts III & IV – Substantive Due Process Claims against All Defendants

The Due Process Clause of the Fourteenth Amendment prohibits state government from depriving "any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. However, "[t]he scope of substantive due process is very limited." *Campos v. Cook Cty.*, 932 F.3d 972, 975 (7th Cir. 2019) (internal quotation marks omitted). "There are two types of substantive due process violations. The first occurs when the state actor's conduct is such that it shocks the conscience. The second occurs when the state actor violates an identified liberty or property interest protected by the Due Process Clause." *T.E. v. Grindle*, 599 F.3d 583, 589 (7th Cir. 2010); *see also Rochin v. California*, 342 U.S. 165, 172–73 (1952); *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923).

The first step in any substantive due process claim is to identify "the interest said to have been violated" and determine whether it is fundamental. *Christensen v. Cty. of Boone, Ill.*, 483 F.3d 454, 462 (7th Cir. 2007). The Complaint identifies two

9

liberty interests at issue: Plaintiff's right to intimate association and his right to be free from sexual harassment in the workplace.[6]

### A. *Count III – Right to Intimate Association*

As previously stated, the freedom of intimate association is "a fundamental element of personal liberty." *Montgomery*, 410 F.3d at 937; *see also Roberts*, 468 U.S. at 617–18. A claim for interference with an intimate association falls within the second category of substantive due process claims, *T.E.*, 599 F.3d at 589, and is properly analyzed under *Zablocki v. Redhail*, 434 U.S. 374, 383–87 (1978), *see Montgomery*, 410 F.3d at 937. "*Zablocki* establishes a two-part inquiry: if the challenged policy imposes a direct and substantial burden on an intimate relationship, it is subject to strict scrutiny; if the policy does not impose a direct and substantial burden, it is subject only to rational basis review." *Id.* at 938.

Defendants' Motion claims the "Complaint is devoid of factual allegations that defendants took any action to prevent or prohibit Plaintiff from associating with his wife." (Doc. 11 at 5).[7] It is true Plaintiff must demonstrate some official policy or possibly action by a McLean County State's Attorney's Office employee "impact[ed] his] ability to associate with" his wife. *Id.* at 938. The Complaint does not identify any

---

[6] The Complaint also seems to assert the right to equal protection is a liberty interest with respect to his substantive due process claims; however, the Equal Protection and Due Process Clauses protect distinct rights and give rise to distinct causes of action.
[7] The Motion also argues the Complaint fails because Plaintiff did not specifically allege intent (doc. 11 at 6); however, neither *Montgomery*, *Zablocki*, nor *Roberts* state allegations of intent are required to state a claim for interference with an intimate association under the Fourteenth Amendment. Consequently, and because Defendants' statement to the contrary is devoid of any citation to authority, the Motion fails on that point.

10

policy under which any actor at the McLean County State's Attorney's Office is thought to have acted, though this is likely due to the fact Plaintiff did not rely on the correct legal framework in asserting this claim.

More importantly, though, the Complaint does not assert any Defendant took any action because of Plaintiff's marriage; rather, the Complaint asserts Defendants took action—read, retaliated[8]—because Plaintiff refused to have an extra-marital affair with Defendant Alferink and reported her advances and conduct. (Doc. 1 at 17–19). Indeed, given Defendant Alferink was herself married (doc. 1 at 6), Plaintiff's marriage seems to be of no moment with respect to her alleged expectation that Plaintiff entertain her advances; it would appear she expected him to associate with her regardless of whether he associated with his wife. In short, nothing in the Complaint suggests Plaintiff was prevented or discouraged from associating with his wife by anyone at the McLean County State's Attorney's Office, even though the Response states Defendants intended to drive a wedge between Plaintiff and his wife (doc. 12 at 8).

---

[8] It should be noted that the "right to be free from retaliation for protesting sexual harassment and sex discrimination is a right created by Title VII, not the [United States Constitution]. Section 1983 provides a remedy for deprivation of constitutional rights. It supplies no remedy for violations of rights created by Title VII." *Gray v. Lacke*, 885 F.2d 399, 414 (7th Cir. 1989). "Only when the underlying facts support both a Title VII and a constitutional deprivation claim can a plaintiff maintain an action under § 1983 and bypass the procedural requirements of Title VII." *Id.* Any amended complaint must comply with the principles espoused in *Gray*.

For these reasons, Count III must be dismissed. Again, because the claim is mostly factually deficient, Plaintiff may replead it if he is able to cure the deficiencies identified herein.

B. *County IV – Right to be Free from Sexual Harassment in the Workplace*

The right to be free from sexual harassment is not a fundamental right protected by the Fourteenth Amendment. *Sung Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 832 (7th Cir. 2012) (citing *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997)) ("The list of such rights and interests is, however, a short one, including things like the right to marry, the right to have children, the right to marital privacy, the right to contraception, and the right to bodily integrity.")[9]; *see also Robinson v. Leonard-Dent*, No. 3:12-CV-417, 2013 WL 5701067, at *8 (N.D. Ind. Oct. 18, 2013), *amended*, No. 3:12-CV-417, 2013 WL 12303991 (N.D. Ind. Nov. 21, 2013) ("Freedom from sexual harassment is not on that list.").

This substantive due process claim thus survives only if "the state actor's conduct is such that it shocks the conscience," *T.E.*, 599 F.3d at 589, as the parties' briefing suggests. *See also Bettendorf v. St. Croix Cty.*, 631 F.3d 421, 426 (7th Cir. 2011) ("A government entity must have exercised its power without reasonable

---

[9] Though Plaintiff does not attempt to argue his liberty interest in bodily integrity was infringed, such an argument would nevertheless fail. "The liberty protected by that clause includes bodily integrity, and is infringed by a serious, as distinct from a nominal or trivial, battery"; "most batteries are too trivial to amount to deprivations of liberty." *Alexander v. DeAngelo*, 329 F.3d 912, 916 (7th Cir. 2003). The alleged batteries here—nonsexual touching and an attempted kiss (if an attempted kiss is battery at all)—are the type of nominal batteries which do not rise to the level of a constitutional deprivation. *See id.* (noting "rape committed under color of state law is . . . actionable under 42 U.S.C. § 1983 as a deprivation of liberty without due process of law").

12

justification in a manner that shocks the conscience in order for a plaintiff to recover on substantive due process grounds." (internal quotation marks omitted)); *Rochin v. California*, 342 U.S. 165, 172 (1952). Plaintiff, however, fails to point the Court's attention to any case holding analogous sexual harassment is conscious-shocking, and the Court has not found one.[10]

In the Court's estimation, the alleged sexual harassment—though unwarranted and unacceptable—is at the mild end of the spectrum and a far cry from conscience-shocking in a constitutional sense. *See Geinosky v. City of Chicago*, 675 F.3d 743, 750 (7th Cir. 2012) (finding nonsexual harassment was not conscience-shocking); *Christensen*, 483 F.3d at 464 (finding a police officer's prolonged "pattern of on-duty conduct designed to harass, annoy, and intimidate" was not conscience-shocking); *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 834–35 (1998) (finding tactics in high-speed chase were not conscience-shocking even though they unintentionally resulted in fleeing suspect's death); *Robinson*, 2013 WL 5701067, at *8 ("[R]un-of-the-mill sexual harassment fall[s] on the side of being too trivial to amount to a deprivation of liberty for constitutional purposes."); *Decker v. Tinnel*, No. 2:04-CV-227, 2005 WL 3501705, at *8 (N.D. Ind. Dec. 20, 2005) (finding no substantive due process claim where male officer, during voluntary ride-along with 18–year–old female, asked her to strip, repeatedly tried to kiss her, forced his hand between her thighs, and groped her breasts); *Nagle v. McKernan*, No. 07 C 680, 2007 WL 2903179,

---

[10] The right to be free from retaliation for reporting sexual harassment derives from Title VII, not the Constitution. *Gray*, 885 F.2d at 414. Retaliation thus cannot give rise to a substantive due process claim.

13

at *1– 2 (N.D. Ill. Sept. 28, 2007) (finding no substantive due process violation where a fire marshal allegedly appeared at a woman's place of work, gave her a love note, and beckoned her to a secluded place in the office, where he leaned against the back of the woman's body and inhaled and exhaled while "intimately press[ing] his face against the back of [the woman's] head and neck."); *King v. Lienemann*, No. CIV. 11-130, 2011 WL 833977, at *4 (S.D. Ill. Mar. 4, 2011) (finding no substantive due process violation where "on one occasion, [the defendant] pulled down his, [the plaintiff's], pants and underwear, seemingly without the use of force" (alteration in original)).

Rather, sexual misconduct cases which shock the judicial conscience "deal with repeated misconduct by a state actor over time that involves the exercise of force and reaches, or closely approaches, the level of rape." *King v. Lienemann*, No. CIV. 11-130, 2011 WL 833977, at *4 (S.D. Ill. Mar. 4, 2011) (citing *Wudtke v. Davel*, 128 F.3d 1057, 1064 (7th Cir. 1997), and *Alexander v. DeAngelo*, 329 F.3d 912, 916–17 (7th Cir. 2003)). In both *Wudtke* and *Alexander*, the batteries far surpassed what would be considered nominal or trivial, so the courts determined the deprivation was one of bodily integrity and thus analyzed the claim under the framework involving a deprivation of a fundamental liberty interest. As previously stated, Plaintiff's claim does not meet that threshold.

Plaintiff's concession argument (doc. 12 at 10), though creative, is unavailing. Failure to move to dismiss a claim constitutes waiver of the right to argue that claim ought to be dismissed as factually deficient, Fed. R. Civ. P. 12(h)(1), not a concession that the alleged facts are actually sufficient to state a claim. Moreover, there is a

14

distinction between the level of egregiousness needed for an Illinois intentional infliction of emotional distress claim and a substantive due process claim. *See Christensen*, 483 F.3d at 466 (reversing the dismissal of an Illinois intentional infliction of emotional distress claim despite affirming the dismissal of a substantive due process claim because the alleged conduct was not conscience-shocking in a Constitutional sense).

In sum, having found the allegations fail to shock the conscience, Count IV must be dismissed. Though the Court seriously doubts Plaintiff omitted allegations of conduct more egregious than those alleged in the Complaint, Plaintiff may replead Count IV if he is able to demonstrate sufficiently shocking conduct.

## IV.   Count I – *Monell* Liability for the Municipal Defendants

Finally, Defendants challenge the municipal liability alleged in Counts I–IV.[11] Having dismissed Counts II–IV, the Court need only consider whether Count I sufficiently alleges liability under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).

"To establish municipal liability, a plaintiff must show the existence of an 'official policy' or other governmental custom that not only causes but is the 'moving force' behind the deprivation of constitutional rights." *Teesdale v. City of Chicago*, 690 F.3d 829, 833 (7th Cir. 2012). "[T]he critical question under *Monell*, reaffirmed in *Los*

---

[11] Because suits against municipal officials in their official capacity are treated as suits against the municipality itself, *Hafer v. Melo*, 502 U.S. 21, 25 (1991), the naming as defendants McLean County; McLean County State's Attorney's Office; current McLean County State's Attorney Don Knapp, in his official capacity; and then-McLean County State's Attorney Jason Chambers, in his official capacity, was unnecessarily duplicative.

15

*Angeles County v. Humphries*, 562 U.S. 29 . . . (2010), is whether a municipal (or corporate) policy or custom gave rise to the harm (that is, caused it), or if instead the harm resulted from the acts of the entity's agents." *Bradley v. Vill. of Univ. Park, Ill.*, 929 F.3d 875, 884 (7th Cir. 2019) (quoting *Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017) (en banc)). "Determining what caused the violation is crucial because *Monell* held that municipalities are not liable for the torts of their employees under the strict-liability doctrine of respondeat superior, as private employers are." *Id.* (internal quotation marks omitted). Rather, municipalities "are liable for damages under [42 U.S.C.] § 1983 only for violations of federal rights that occur 'pursuant to official municipal policy of some nature.'" *Id.* (quoting *Monell*, 436 U.S. at 691).

"The "official policy" requirement for *Monell* claims is 'intended to distinguish acts of the municipality from acts of employees of the municipality' and to limit liability to 'action for which the municipality is actually responsible.'" *Id.* (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479–80 (1986)). An official policy may be adequately pled by facts demonstrating:

> (1) "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or (2) the "constitutional deprivations [were] visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels," or (3) the deprivation was made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.

*Id.* (alterations in original) (quoting *Monell*, 436 U.S. at 690–91, 94).

A municipal "defendant need not 'participate[ ] directly in the deprivation' for liability to follow under § 1983." *Backes v. Vill. of Peoria Heights, Ill.*, 662 F.3d 866,

869–70 (7th Cir. 2011) (alteration in original) (quoting *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001)); *Palmer v. Marion Cty.*, 327 F.3d 588, 594 (7th Cir. 2003) (noting municipal liability may arise under *Monell* for a municipality's deliberate indifference to constitutional violations). In such a case, official policymakers "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference." *Backes*, 662 F.3d at 870 (internal quotation marks omitted). Such action or inaction may give rise to liability not only in a supervisor's official capacity, if the supervisor is an official policymaker, but also in his or her individual capacity. *See Palmer*, 327 F.3d at 594; *Clay v. Conlee*, 815 F.2d 1164, 1168–70 (8th Cir. 1987) ("[W]hen supervisory liability is imposed, it is imposed against the supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates.").

The constitutional deprivation alleged here is an equal protection violation in that Plaintiff was denied equal protection when he was allegedly subjected to pervasive sexual harassment in the workplace. *Valentine v. City of Chicago*, 452 F.3d 670, 682 (7th Cir. 2006), as amended (July 6, 2006). ("Sexual harassment by a state employer constitutes sex discrimination in violation of the equal protection clause."). Again, however, the "right to be free from retaliation for protesting sexual harassment and sex discrimination is a right created by Title VII, not the equal

protection clause." *Gray*, 885 F.2d 414. Consequently, only the sexual harassment, and not the retaliation, may be considered.

The Complaint has sufficiently alleged *Monell* liability to survive a Rule 12(b)(6) motion. Plaintiff alleges both Defendant Chambers and Defendant Alferink were policymakers and supervisors within the McLean County State's Attorney's Office.[12] (Doc. 1 at 4). Indeed, Defendant Chambers was the State's Attorney at the time of the alleged events and therefore had ultimate policymaking power and was the ultimate supervisor. (Doc. 1 at 4). The Complaint further alleges Defendant Chambers witnessed the alleged sexual harassment and did nothing to stop it (doc. 1 at 7), meaning he "turn[ed] a blind eye" or possibly condoned it. Moreover, when Plaintiff complained of Defendant Alferink's misconduct to Defendant Chambers, he did nothing about it other than fire Plaintiff. (Doc. 1 at 2, 3, 11). Taken as true, these allegations are sufficient to demonstrate the ultimate supervisor and policymaker of the McLean County State's Attorney's Office acted with a conscious disregard and/or deliberate indifference to ongoing, pervasive sexual harassment perpetrated against Plaintiff by Defendant Alferink. *See Valentine*, 452 F.3d at 683 ("[A] a plaintiff can make an ultimate showing of sex discrimination . . . by showing that the conscious

---

[12] Defendant Alferink is sued in her individual capacity, not in her official capacity. Her status and actions, therefore, are irrelevant to the *Monell* and supervisory liability inquiries. Moreover, the supervisory liability theory is not necessary to hold Defendant Alferink liable for her own conduct; supervisory liability is a theory which holds a supervisor liable for the acts of a subordinate, typically when the subordinate's acts are the result of "a breach of the supervisor's duty to train, supervise, or control the actions of subordinates." *Clay*, F.2d at 1170. The only basis for Defendant Alferink's liability for Count I alleged in the Complaint is her personal liability for her own conduct.

failure of the employer to protect the plaintiff from the abusive conditions created by fellow employees amounted to intentional discrimination.").

For these reasons, Defendants' request to dismiss the municipal liability alleged in Count I is denied.

### CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss for Failure to State a Claim (doc. 11) is GRANTED IN PART and DENIED IN PART; Counts II, III, and IV are DISMISSED WITHOUT PREJUDICE. If Plaintiff is able to cure the factual deficiencies identified herein, he may file an amended complaint within twenty-one (21) days of the date of this Order.

SO ORDERED.

Entered this 23rd day of April 2020.

                                                    s/ Joe B. McDade
                                                    JOE BILLY McDADE
                                      United States Senior District Judge